UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID G. PETERSON, | : | Case No. 1:13-cv-422 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| NORTHLAND INSURANCE | : | |
| COMPANY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT STATE FARM'S MOTION FOR SUMMARY
JUDGMENT (Doc. 33); GRANTING DEFENDANT NORTHLAND INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. 35); DENYING
DEFENDANT STATE FARM'S MOTION FOR LEAVE TO AMEND ITS
ANSWER (Doc. 46); AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY
JUDGMENT (Docs. 57, 58)[1]**

        This civil action is before the Court on Defendant State Farm's motion for

summary judgment (Doc. 33) and motion for leave to amend its answer (Doc. 46),

Defendant Northland Insurance Company's motion for summary judgment (Doc. 35),

Plaintiff's motion for summary judgment against Defendant State Farm (Doc. 57),

Plaintiff's motion for summary judgment against Defendant Northland Insurance

Company (Doc. 58), and the parties' responsive memoranda (Docs. 34, 46, 49, 50, 55,

56, 61, 63, 65, and 66).

---

[1] Plaintiff asserts a cause of action against "State Farm Insurance Company." (Doc. 26). State Farm Mutual Automobile Insurance Company ("SFMAIC") denies that any such legal entity exists and answers to the extent Plaintiff attempts to assert a cause of action against SFMAIC. (*See* Docs. 7, 15). Because the Court grants SFMAIC's motion for summary judgment on other grounds, it need not reach the question of whether Plaintiff accomplished service of process. Here, the Court will use "Defendant State Farm" in lieu of SFMAIC.

## I.    BACKGROUND FACTS

Plaintiff was involved in an accident while driving a semi truck and tractor trailer owned by his employer, J.A.B. Express, LLC ("J.A.B.").  He asserts claims for medical payments ("Med Pay") coverage and uninsured motorist ("UM") coverage under both his personal policy with Defendant State Farm and his employer's policy with Defendant Northland Insurance Company ("Northland").  Defendants State Farm and Northland deny that Plaintiff is entitled to such coverage under the terms of their respective policies. The Court's jurisdiction is based on diversity of citizenship.  (*See* Doc. 1 at 2) (citing 28 U.S.C. §§ 1332, 1441(a)).

## II.    UNDISPUTED FACTS

### A.    In Support of Defendant State Farm's Motion for Summary Judgment[2]

1. On May 22, 2011, Plaintiff David Peterson, a Wisconsin resident, was driving a semi truck and tractor trailer owned by his employer J.A.B. Express, LLC ("J.A.B."), from Wisconsin to Virginia during the course and scope of his employment with J.A.B.

2. Plaintiff's personal vehicle was insured under an automobile policy of insurance issued to Plaintiff by State Farm Mutual Automobile Insurance Company ("State Farm") subject to the terms, conditions and exclusions of the policy and its endorsements.

3. Plaintiff claims that, just prior to his accident, another truck was traveling toward him in the opposite direction.  Plaintiff alleges that truck crossed over the center line and forced Plaintiff to steer his truck intentionally off the right side of the roadway.  Plaintiff does not claim there was any contact between his truck and the alleged other unidentified vehicle.  Plaintiff has no evidence regarding the identity of the other driver or the other vehicle.

4. Ohio State Highway Patrolman Michael Ervin responded to the scene of the accident shortly following the accident.  Trooper Ervin testified in his deposition

---

[2] *See* Docs. 52 and 54.

that he spoke to the Plaintiff at the accident scene and that Plaintiff made no mention of another vehicle being involved in the accident. Trooper Ervin's investigation produced no evidence of physical contact between Plaintiff's vehicle and another vehicle. His investigation produced no evidence that any other vehicle was involved in or contributed to Plaintiff's accident.

5.   As a result of the accident, Plaintiff applied for and received workers' compensation benefits.

**B.**   **In Support of Plaintiff's Motion for Summary Judgment Against Defendant State Farm**[3]

1.   On May 22, 2011, Plaintiff David Peterson, a Wisconsin resident, was driving a semi truck and tractor trailer owned by his employer J.A.B. Express, LLC ("J.A.B."), from Wisconsin to Virginia during the course and scope of his employment with J.A.B.

2.   Plaintiff's personal vehicle was insured under an automobile policy of insurance issued to Plaintiff by State Farm Mutual Automobile Insurance Company ("State Farm") subject to the terms, conditions and exclusions of the policy and its endorsements.

3.   The semi truck and tractor trailer Plaintiff was driving was insured under a commercial policy of insurance issued to J.A.B. by Northland Insurance Company ("Northland") subject to the terms, conditions, and exclusions of the policy and its endorsements.

4.   James Crosby had seen Plaintiff's truck coming down the road from his kitchen window. After seeing Plaintiff's truck, Mr. Crosby turned away from his kitchen window and soon thereafter heard the accident. When Mr. Crosby looked out of his kitchen window to see what the noise was, he saw another truck going in the opposite direction.

5.   Directly after the accident, Plaintiff was treated by emergency medical services and taken by squad to the hospital.

6.   Plaintiff described the truck that forced him off the road as being a red "dump truck or gravel truck" with a coal bucket attached.

7.   Mr. Crosby described the unidentified vehicle that was present at the scene of the accident as a red tractor trailer, pulling a coal bucket.

---

[3] *See* Docs. 57-4 and 59.

8. The State Farm policy requires that the facts of the accident must be corroborated by a disinterested person who witnessed the accident.

9. The State Farm policy does not use the words "visual confirmation" or "eye witness" in its definition of "uninsured motor vehicle".

## C.    In Support of Defendant Northland's Motion for Summary Judgment[4]

1. On May 22, 2011, Plaintiff David Peterson, a Wisconsin resident, was driving a semi truck and tractor trailer owned by his employer, J.A.B. Express, LLC ("J.A.B."), from Wakesha, Wisconsin to Abingdon, Virginia during the course and scope of his employment.

2. The semi truck and tractor trailer Plaintiff was driving was insured under a commercial policy of insurance issued to J.A.B. by Northland Insurance Company ("Northland") subject to the terms, conditions, and exclusions of the policy and its endorsements.

3. Plaintiff claims that just prior to his accident another semi truck was traveling toward him in the opposite direction, crossed over the center line into Plaintiff's lane, and forced Plaintiff off of the road. Plaintiff does not claim there was any contact between his truck and the alleged unidentified vehicle.

4. Ohio State Highway Patrolman Michael Ervin responded to the scene shortly after the accident occurred. Trooper Ervin testified in deposition that when speaking with Plaintiff at the scene Plaintiff made no mention of another vehicle being involved in the accident, and Mr. Ervin's investigation produced no evidence that another vehicle was involved or in any way contributed to Plaintiff's accident.

5. As a result of the accident, Plaintiff applied for and received workers' compensation benefits based on his employment with J.A.B.

6. Plaintiff's amended complaint, filed November 25, 2013, seeks uninsured motorist ("UM") and medical payments ("Med Pay") coverage under the Northland policy. Per its terms, the Northland policy provides UM coverage subject to the policy's stated terms, conditions, and exclusions; the policy terms do not provide for Med Pay coverage.

---

[4] *See* Docs. 36 and 53.

**D.    In Support of Plaintiff's Motion for Summary Judgment Against Defendant Northland**[5]

1. On May 22, 2011, Plaintiff David Peterson, a Wisconsin resident, was driving a semi truck and tractor trailer owned by his employer J.A.B. Express, LLC ("J.A.B."), from Wisconsin to Virginia during the course and scope of his employment with J.A.B.

2. Plaintiff's personal vehicle was insured under an automobile policy of insurance issued to Plaintiff by State Farm Mutual Automobile Insurance Company ("State Farm") subject to the terms, conditions and exclusions of the policy and its endorsements.

3. The semi truck and tractor trailer Plaintiff was driving was insured under a commercial policy of insurance issued to J.A.B. by Northland Insurance Company ("Northland") subject to the terms, conditions, and exclusions of the policy and its endorsements.

4. Plaintiff claims that, just prior to his accident, another semi truck was traveling toward him in the opposite direction, crossed over the center line into Plaintiff's lane, and forced Plaintiff off of the road.  Plaintiff does not claim there was any contact between his truck and the alleged unidentified vehicle.

5. James Crosby, the owner of the property where the accident occurred, had seen Plaintiff's truck coming down the road from his kitchen window.  After seeing Plaintiff's truck Mr. Crosby turned away from his kitchen window and soon thereafter heard the accident.  When Mr. Crosby looked out of his kitchen window to see what the noise was, he saw another truck going in the opposite direction.

6. Plaintiff specifically complained of a head injury to Officer Michael Ervin at the scene of the accident.

7. Directly after the accident, Plaintiff was treated by emergency medical services and taken by squad to the hospital.

8. Mr. Crosby described the unidentified vehicle that was present at the scene of the accident as a red tractor trailer pulling a coal bucket.

9. The Northland policy requires that an independent third party provide evidence in support of the unidentified vehicle's involvement in the accident.

---

[5] *See* Docs. 58-2 and 62.

10. The Northland policy does not use the words "visual confirmation" or "eye witness" in its definition of "uninsured motor vehicle."

11. Accident re-constructionist Jack Holland has formed a report stating that the physical evidence at the scene "supports Mr. Peterson's claim that he was run off the road by another vehicle."

### III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

### IV.    ANALYSIS

A.    **Applicable Law**

When sitting in diversity, the Court "must apply the choice of law rules of the forum state to determine which state's laws govern the dispute."  *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013) (citations omitted).

"Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971)." *Ohayon v. Safeco Ins. Co.*, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001), paragraph two of the syllabus.

> Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has "the most significant relationship to the transaction and the parties." Restatement at 575, Section 188(1). To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties.

*Id.* at 477. "In insurance cases, this focus will often correspond with the Restatement's view that the rights created by an insurance contract should be determined 'by the local law of the state which the parties understood was to be the <u>principal location of the insured risk during the term of the policy</u>.'" *Ohayon*, 91 Ohio St.3d at 479 (quoting Restatement at 610, Section 193) (emphasis in original).

Plaintiff resides in Wisconsin. (Doc. 33-1; Doc. 43 at 3). The State Farm policy was issued in Wisconsin by a State Farm agent located in Wisconsin for Plaintiff's personal vehicle, which was also located in Wisconsin. (*See* Doc. 33-2). The Northland policy was negotiated and issued in Wisconsin and contains provisions specific to Wisconsin; Plaintiff's employer, to whom the Northland policy was issued, is located in Wisconsin; and the insured vehicle at issue was registered and garaged in Wisconsin. (Doc. 35-3 at 2, 53-55; Doc. 43 at 3-4, 8-9). No party disputes that Wisconsin law

applies.  Accordingly, the Court will apply Wisconsin law with respect to the coverage provided by the State Farm and Northland policies.

Under Wisconsin law, the interpretation of an insurance policy is governed by the same rules of construction that apply to other contracts.  *RTE Corp. v. Maryland Cas. Co.,* 74 Wis.2d 614, 620, 247 N.W.2d 171 (1976).   "An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857 (citation omitted).  "As a general rule, the language in an insurance contract is given its common, ordinary meaning, that is, what the reasonable person in the position of the insured would have understood the words to mean."  *Id.* at ¶17 (internal quotations omitted).  If the policy terms are unambiguous, courts interpret the policy as written.  *See Hirschhorn v. Auto–Owners Insurance Co.,* 2012 WI 20, ¶ 24, 338 Wis.2d 761, 809 N.W.2d 529.

Insurance policy language is ambiguous when words are "so imprecise and elastic as to lack any certain interpretation or are susceptible to more than one reasonable construction."  *Frost ex rel. Anderson v. Whitbeck,* 2002 WI 129, ¶ 18, 257 Wis.2d 80, 654 N.W.2d 225 (citations omitted).  When an ambiguity exists within an insurance contract, courts construe the policy in favor of the insured, that is, in favor of coverage. *Id.* at ¶ 19.

**B.     The State Farm Policy**

**1.     Defendant State Farm's Motion for Summary Judgment**

In its motion for summary judgment, Defendant State Farm argues that Plaintiff is not entitled to Med Pay or UM coverage under the terms of its policy.  Specifically, Defendant State Farm claims that Plaintiff is not entitled to (1) Med Pay or UM coverage because Plaintiff failed to promptly notify Defendant State Farm of the accident ("Notice Defense"); (2) Med Pay coverage because Plaintiff does not meet the definition of an "insured" for the purposes of such coverage and because the policy excludes such coverage when workers' compensation applies to the claimed loss ("Med Pay Defense"); or (3) UM coverage because the facts of the accident are not corroborated by a disinterested person who witnessed the accident ("UM Defense").  Because the Court finds that Defendant State Farm's Notice Defense precludes Plaintiff's Med Pay and UM claims, the Court need not address Defendant State Farm's other two defenses.[6]

---

[6] However, Defendant State Farm's Med Pay Defense also precludes Plaintiff's claim for Med Pay coverage.  For the purposed of Med Pay coverage, "Insured" is defined as: "1. You and resident relatives: a. while occupying: (1) your car; (2) a newly acquired car; (3) a temporary substitute car; (4) a non-owned car; or (5) a trailer attached to a car described in (1), (2), (3), or (4) above . . ."  (Doc. 33-3 at 12) (emphasis removed).  A non-owned car is defined as "a car that is in the lawful possession of you or any resident relative and that neither: 1. is owned by: a. you; b. any resident relative; c. any other person who resides primarily in your household; or d. an employer of any person described in a., b., or c. above . . ." (*Id.* at 5) (emphasis removed).  It is undisputed that driving the semi truck and tractor trailer Plaintiff was driving was owned by his employer, J.A.B.  Therefore, the vehicle does not meet the definition of a non-owned vehicle, and Plaintiff does not qualify as an "insured" for the purposes of Med Pay coverage.  Further, the State Farm policy excludes coverage "to the extent that any workers' compensation law or any similar law applied to that person's bodily injury."  (*Id.* at 14) (emphasis removed).  It is undisputed that, as a result of the accident, Plaintiff applied for and received workers' compensation benefits.  For these reasons, Defendant State Farm is also entitled to summary judgment on Plaintiff's Med Pay claim pursuant to its Med Pay Defense.

### a. Notice Defense

The State Farm policy provides in pertinent part:

## INSURED'S DUTIES

### 1. Notice to Us of an Accident or Loss

The **insured** must give **us** or one of **our** agents notice of the accident or **loss** as soon as reasonably possible. . . .

### 6. Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage . . .

A person making claims under:

a. Medical Payments Coverage [or] Uninsured Motor Vehicle Coverage . . . must:

> (1) notify **us** of the claim and give **us** all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured **insured** is first examined or treated for the injury. . . .

b. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police within 24 hours and to **us** within 30 days.

(Doc. 33-3 at 37, 39).

Under Wisconsin law, "notice or proof of loss [must be] furnished as soon as reasonably possible and within one year after the time it was required by the policy," but "failure to furnish . . . notice [of claims] or proof [of loss] within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit." Wis. Stat. § 631.81(1). "The insurer has the burden to show that notice was not timely." *Neff v. Pierzina,* 2001 WI 95, ¶ 36, 245

Wis.2d 285, 629 N.W.2d 177 (*citing Resseguie v. Am. Mut. Liab. Ins. Co.,* 51 Wis.2d 92, 104, 186 N.W.2d 236 (1971).

Pursuant to Wis. Stat. § 632.26 and the case law that predated it, yet appears to be consistent with it, "where notice is given more than one year after the time required by the policy, there is a rebuttable presumption of prejudice." *Gerrard Realty Corp. v. Am. States Ins. Co.,* 277 N.W.2d 863, 872 (Wis.1979).[7]  "[L]ate notice is not prejudicial per se, 'but the risk of nonpersuasion is upon the person claiming there was no prejudice.'" *Neff*, 2001 WI 95, at ¶ 42 (quoting Wis. Stat. § 632.26(2)).

Generally, whether a liability insurer has been prejudiced by late notice is considered a question of fact, but the question may be determined as a matter of law where the facts are not in dispute.  *Neff*, 2001 WI 95, at ¶ 48 (citation omitted). "Prejudice to the insurer in this context is a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice." *Id.* at ¶ 44.

---

[7] Wis. Stat. § 632.26 states as follows:

**(1) Required provisions.** Every liability insurance policy shall provide:

(a) That notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured, is notice to the insurer.

(b) That failure to give any notice required by the policy within the time specified does not invalidate a claim made by the insured if the insured shows that it was not reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably possible.

**(2) Effect of failure to give notice.** Failure to give notice as required by the policy as modified by sub. (1)(b) does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there was no prejudice.

It is undisputed that Plaintiff's accident occurred on May 22, 2011.  However, Defendant State Farm did not receive notice of the accident until May 23, 2013, when it was served with a copy of Plaintiff's complaint.  (*See* Doc. 34-7).  Plaintiff has not presented any evidence to the contrary.

Moreover, there was not any reasonable justification for the delay.  Construing the evidence in the light most favorable to Plaintiff, the Court notes that Plaintiff complained of a head injury, which may have interfered with his ability to recall that he was in an accident or that another vehicle had been involved.  (*See* Doc. 40 at 78; Doc. 43 at 49, 51; Doc. 44 at 23).  However, Plaintiff began telling his medical providers that another vehicle was involved in his accident on June 9, 2011.  (*Id.* at 59-60).[8]  Further, Plaintiff testified that about ten days after the accident, he recalled that another vehicle had been involved in his accident.  (Doc. 43 at 56-57).  Therefore, it was reasonably possible for Plaintiff to notify State Farm of the accident by at least June 2011.  Instead, Plaintiff waited until May 2013.

Plaintiff has not set forth specific facts showing that there is a genuine issue as to whether his notice to Defendant State Farm was timely.  The two-year gap between when Plaintiff was aware of his accident and when he provided notice of the same to Defendant State Farm violates the policy's general requirement that the accident be reported "as reasonably possible," the 30-day policy requirement specific to UM cases involving unknown vehicles, and the one-year grace period provided by Wisconsin law.

---

[8] At his deposition, Plaintiff claimed that he had no memory of giving this account.  (*Id.* at 60).

The remaining question is whether Plaintiff's late notice caused prejudice to Defendant State Farm.  Late notice is not prejudicial *per se*, but Plaintiff bears the risk of nonpersuasion.  *Neff*, 2001 WI 95, at ¶ 42 (quoting Wis. Stat. § 632.26(2)).  However, Plaintiff does not respond to Defendant State Farm's Notice Defense, other than to argue that it has been waived.  (*See* Part B.1, *infra*).[9]  Accordingly, Plaintiff has not satisfied his burden, and the Court finds that summary judgment in favor of Defendant State Farm is warranted as a result of the presumptive prejudice arising from Plaintiff's failure to timely notify Defendant State Farm of the accident.

### b.   Waiver

Plaintiff alleges that Defendant State Farm waived the defenses upon which it relies in its motion for summary judgment by failing to assert them in its first responsive pleading.  Defendant State Farm did not raise its Notice, Med Pay, or UM Defenses in its answer.  (*See* Doc. 7).  Nor did Defendant State Farm reserve the right to assert defenses not set forth therein.  (*Id.*)  Because the Court relies on Defendant State Farm's Notice Defense, it needs only to address whether that defense was waived.[10]

---

[9] In fact, in his motion for summary judgment against Defendant State Farm, Plaintiff argues that it is "now impossible" for Defendant State Farm to obtain expert testimony to refute Plaintiff's expert's opinion because "any physical evidence has been lost and/or altered".  (Doc. 57 at 11).  This argument suggests that Defendant State Farm was not just presumptively prejudiced by Plaintiff's late notice, but was also actually prejudiced.

[10] Plaintiff claims that Defendant State Farm's Med Pay Defense was waived because, having not been put on notice that Defendant State Farm would defend these grounds, Plaintiff had no way to prepare to combat the defense.  Plaintiff claims that to now require him to argue against this defense would prejudice him greatly.  However, Plaintiff cites no authority that the policy definition and exclusion invoked by Defendant State Farm as a part of this defense (*see* note 6, supra) are either affirmative defenses or conditions precedent.  For this reason, the Court finds that the Med Pay Defense is not waived.

Where a district court exercises diversity jurisdiction, it is bound to apply the substantive law of the forum state and federal procedural law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996)). Thus, federal law governs whether a defense is waived, and state law defines the nature of a defense. *See Montgomery v. Wyeth*, 580 F.3d 455, 468 n.7 (6th Cir. 2009) (citing *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 901 (6th Cir. 2002)).

Federal Rule of Civil Procedure 8(c)(1) provides, in relevant part:

In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: accord and satisfaction; arbitration and award; assumption of the risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver.

Failure to plead an affirmative defense in the first responsive pleading generally results in a waiver of that defense. *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Haskell v. Washington Twp.,* 864 F.2d 1266, 1273 (6th Cir. 1988)). However, because the purpose of Rule 8(c) is to give notice and an opportunity to respond, "[a] defendant does not waive an affirmative defense if the defense is raised at a time when plaintiff's ability to respond is not prejudiced." *R.H. Cochran & Assoc., Inc. v. Sheet Metal Workers Int'l Assoc.,* 335 F. App'x 516, 519 (6th Cir. 2009) (citing *Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1445 (6th Cir. 1993)). For the purposes of this analysis, the Court will assume, without deciding, that Defendant State Farm's Notice Defense was an affirmative defense under relevant state law.

Plaintiff alleges that he was not put on notice that Defendant State Farm intended to invoke the Notice Defense until Defendant State Farm filed its motion for summary judgment.  Plaintiff claims that, had he been made aware that Defendant State Farm intended to claim that Plaintiff failed to notify it of the accident as allegedly required, he could have conducted discovery to combat this claim.  Plaintiff also claims that, at the time Defendant State Farm filed its motion for summary judgment, Plaintiff had provided his initial disclosures, responded to interrogatories and requests for production, drafted and propounded interrogatories and requests for production, and conducted four depositions, without knowledge of the Notice Defense.  Plaintiff argues that to require him to litigate these claims would be contrary to the purpose of notice pleading, the rules of civil procedure, and case law and would prejudice him.

However, Defendant State Farm filed its motion for summary judgment three months *before* both the discovery deadline and the dispositive motion deadline.  Further, facts related to the provision of notice are straightforward and have not been disputed by Plaintiff.  If Plaintiff felt he could not properly oppose the motion because he needed to conduct additional discovery, he could have petitioned the Court for additional time pursuant to Fed. R. Civ. P. 56(d).

Plaintiff has not provided the Court with *any* explanation of the additional discovery he believes he needed to address the Notice Defense.  The parties deposed Trooper Ervin, James Crosby, and Plaintiff.[11]  Neither Ervin nor Crosby could have

---

[11] The parties also deposed Jay Schneider, J.A.B.'s owner.  J.A.B. was insured by Defendant Northland, not Defendant State Farm.

addressed the notice issue and, if Plaintiff had any information to add regarding the

notice he provided to Defendant State Farm, he could have signed an affidavit and

attached it to his memorandum in opposition.[12]  Thus, Plaintiff has not explained *how* his

ability to respond to the Notice Defense has been prejudiced.  Accordingly, for the

foregoing reasons, the Court finds that Defendant State Farm has not waived its Notice

Defense.[13]

---

[12] Further, Defendant State Farm's counsel represents that the policy was provided to Plaintiff in August 2013, and that counsel discussed coverage issues, including notice and a phantom vehicle, on multiple occasions since then.  (Doc. 46 at 13).

[13] Plaintiff claims that, in addition to being an affirmative defense, Defendant State Farm's Notice Defense is a denial of the performance of a condition precedent, which was not pled in accordance with Fed. R. Civ. P. 9(c).  Rule 9(c) states as follows:

> **Conditions Precedent.** In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

However, the Sixth Circuit has concluded that a party is not required to plead the failure of a condition precedent if that failure is raised in a motion for summary judgment:

> *Rule 9(c) does not specify that a denial of the performance of a condition precedent must be made in an answer or amended answer.* Under the circumstances of this case, we think that the specific denials made in Top Driver's summary judgment motion are sufficient. *Cf. Stearns v. Consolidated Management, Inc.,* 747 F.2d 1105, 1112 (7th Cir. 1984) ("A defendant may raise the issue of non-performance of a condition precedent prior to trial by way of a motion for summary judgment"); 2 Moore's Federal Practice§ 9.04[3] (3d ed. 2000) ("Denial of performance or occurrence of a condition precedent can also be made in a motion for summary judgment").

*Heights Driving Sch. v. Top Driver,* 51 Fed. App'x 932, 939-40 (6th Cir. 2002) (emphasis added); *see also Associated Mech. Contractors v. Martin K. Eby Constr. Co.*, 271 F.3d 1309, 1317 (11th Cir. 2011) ("The specific denial of performance of conditions precedent may be raised by motion as well as by answer.")  Further, Plaintiff did not affirmatively plead that conditions precedent to the policy were met, as required under Rule 9(c).  *See N Am. Specialty Ins. Co. v. Goldstein Enters., LLC,* 2008 U.S. Dist. LEXIS 23439, 16-17 (W.D. Mich. Mar. 25, 2008).  For these reasons, the Court declines to find that the Notice Defense was waived as an improperly pled denial of a condition precedent.

**2.      Defendant State Farm's Motion for Leave to Amend its Answer**

Defendant State Farm moves for leave to file an amended answer, should the Court find that one or more of its coverage defenses were conditions precedent that were required to be pled in its answer.  Because the Court has not so found, Defendant State Farm's motion for leave to amend its answer (Doc. 46) is moot.

**3.      Plaintiff's Motion for Summary Judgment**

Plaintiff moves the Court for summary judgment on his UM claim under the terms of the State Farm policy.[14]  Plaintiff argues that UM coverage is warranted because (1) Crosby's testimony provides sufficient corroborative evidence of the involvement of an unidentified vehicle; (2) the only fact evidence supports Plaintiff's claim that he was run off the road; and (3) even if Defendant State Farm retained an expert to refute Plaintiff's version of the facts, that expert would not be able to satisfy the requirements set forth in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993).

The Court need not reach the merits of Plaintiff's arguments because it finds that his UM claim is precluded by his failure to timely notify Defendant State Farm of the accident and to rebut the presumption of prejudice that arises under Wisconsin law. Accordingly, Plaintiff's motion for summary judgment against Defendant State Farm is not well taken.

---

[14] Because Plaintiff moves for summary judgment on his UM claim only, this motion is more properly characterized as a cross motion for partial summary judgment.

## C.    The Northland Policy

In its motion for summary judgment, Defendant Northland argues that Plaintiff is not entitled to Med Pay or UM coverage under the terms of the policy it issued to Plaintiff's employer, J.A.B.  Specifically, Defendant Northland claims that Plaintiff is not entitled to (1) Med Pay or UM coverage because Plaintiff failed to notify Defendant Northland that an unidentified vehicle caused the accident in a timely manner ("Notice Defense"); (2) Med Pay coverage because the policy excludes such coverage ("Med Pay Defense"); or (3) UM coverage because Plaintiff cannot produce independent third-party evidence that Plaintiff's accident was caused by the negligence of a driver of an unidentified motor vehicle ("UM Defense").  Plaintiff moves the Court for summary judgment on his UM claim under the terms of the Northland policy.[15]  Because the Court finds that Defendant Northland's Med Pay and UM Defenses preclude coverage, it need not address the Notice Defense here.

### 1.    Med Pay Defense

Defendant Northland also moves for summary judgment on Plaintiff's Med Pay claim on the grounds that its policy does not provide for Med Pay coverage.  (*See* Doc.

---

[15] Because Plaintiff moves for summary judgment on his UM claim only, this motion is more properly characterized as a cross motion for partial summary judgment.

35-3 at 24-25). Indeed, such coverage is excluded.[16]

While the relevant Wisconsin statute provides for mandatory Med Pay coverage in certain circumstances, the statute states that such coverage "may be excess coverage over any other source of reimbursement to which the insured person has a legal right." Wis. Stat. § 632.32(4)(a)(3m). Accordingly, the Northland policy provides, in relevant part, as follows:

> **B. Exclusions**
>
> This insurance does not apply to any of the following: . . .
>
> **3. Workers' Compensation**
>
>> Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

(Doc. 35-3 at 31). It is undisputed that Plaintiff applied for and received workers' compensation benefits based on his employment with J.A.B.

Plaintiff does not attempt to dispute Defendant Northland's entitlement to summary judgment on his Med Pay claim. (*See* Part II.C, undisputed fact no. 6, *supra*; Doc. 49). Based on the foregoing, the Court finds, as a matter of law, that Northland is not liable for Med Pay coverage.

---

[16] The Northland policy provides, in relevant part, as follows:

> **B. Exclusions**
> This insurance does not apply to any of the following: . . .
> **4. Employee Indemnification and Employer's Liability**
>> "Bodily injury" to:
>> a. An "employee" of the "insured" arising out of and in the course of:
>>> (1) Employment by the "insured"; or
>>> (2) Performing the duties related to the conduct of the "insured's" business . . . .

(Doc. 35-3 at 31).

2.      **UM Defense**

As described above, both Plaintiff and Defendant Northland move for summary

judgment on this claim.  The Court considers their respective arguments herein.

The Northland policy provides the following UM coverage:

> We will pay all sums the "insured" is legally entitled to recover as compensatory
> damages from the owner of driver of an "uninsured motor vehicle".  The damages
> must result from "bodily injury" sustained by the "insured" caused by an accident.
> The owner's or driver's liability for the damages must result from the ownership,
> maintenance, or use of the "uninsured motor vehicle."

(Doc. 35-3 at 53).  The policy defines an "uninsured motor vehicle," for purposes of

coverage, as follows:

> 3. "Uninsured motor vehicle" means a land motor vehicle or "trailer": . . .
>
>> d.  A vehicle whose driver or owner cannot be identified.  If there is no
>> physical contact with the unidentified motor vehicle causing the
>> accident, evidence in support of such motor vehicle's involvement in the
>> accident must be provided by an independent third party.

(*Id.* at 55).

The language of Wisconsin's uninsured motorist statute in effect at the time of

Plaintiff's accident provided as follows:

> "Uninsured motor vehicle" also includes any of the following motor vehicles . . .
>
> 2. Except as provided in subd. 3., any unidentified motor vehicle, provided that an
> independent 3rd party provides evidence in support of the unidentified motor
> vehicle's involvement in the accident.
>
> 3. An unidentified motor vehicle involved in a hit-and-run accident with the
> person.

Wis. Stat. 632.32(2)(g) (2010-11).[17]

It is undisputed that there was no contact between Plaintiff's truck and the alleged unidentified vehicle. Thus, the question presented is whether James Crosby, the owner of the property where the accident occurred, provides "evidence in support of [the unidentified] motor vehicle's involvement in the accident."[18]

In evaluating Defendant's UM Defense, the Court views the evidence in the light most favorable to Plaintiff. Crosby had seen Plaintiffs truck coming down the road from his kitchen window. (Doc. 41 at 22). Crosby then turned away from his kitchen window and soon thereafter heard "a lot of loud banging, thumping around, crashing around." (*Id.* at 19). The accident was so close to Crosby's home that he felt his house shake. (*Id.* at 27). When Crosby once again looked out of his kitchen window to see what the noise was, he saw another truck going in the opposite direction that Plaintiffs truck had been traveling. (*Id.* at 19). Crosby described the time that he heard the commotion and the time he looked out of his window for the second time as "pretty much quite simultaneous". (*Id.* at 71-72). Crosby then looked out of his back door and saw Plaintiff's truck land on its side. (*Id.* at 24). As Crosby approached the accident on foot, the wheels on Plaintiffs truck were still turning. (*Id.* at 25).

---

[17] The applicable version of this statute was in effect from November 1, 2009 to November 1, 2011. The preceding and subsequent versions of Wis. Stat. 632.32 each contained different definitions of "uninsured motorist." *See Belding v. Demoulin*, 2014 WI 8, n. 2, 352 Wis. 2d 359, 362, 843 N.W.2d 373, 374.

[18] The Court finds that Plaintiff cannot meet the policy's independent evidence requirement with the report of a hired expert. The unambiguous policy conditions require that an "independent third party" corroborate Plaintiff's claimed version of events. The report of Plaintiff's expert, Jack Holland, cannot be considered "independent," as has been Holland has been retained, and is being paid, by Plaintiff for the purpose of supporting Plaintiff's version of events. Further, he has no personal knowledge as to what or who caused Plaintiff's accident.

Crosby testified that he believed, based on his personal knowledge of that particular road and the events that he perceived, that the two trucks would have passed each other somewhere in front of his house.  (Doc. 41 at 76). Crosby testified "as an assumption, I would say one of the two got crowded off the road".  (*Id.* at 28).  Crosby described the basis for his assumption in the following way:

> A. I just, two and two together. When I was at my refrigerator, bangity (phonetic) boom, you see a truck out the window, and a split second later you hear a lot of commotion. I looked again to make sure he wasn't coming through my house.
> Q. Yes.
> A. And that's when I seen the other truck going out of sight.

(*Id.* at 72).

Plaintiff notes that the policy does not require visual confirmation or testimony of an "eye witness" and argues that Crosby's testimony proves that another vehicle was involved in the accident.  However, independent evidence that a vehicle was somehow "involved" in the accident, but was in no way at fault for the accident, would be irrelevant to a determination of UM coverage under the policy or the applicable Wisconsin statute and would render the independent evidence provision meaningless. Wisconsin courts have stated that "[t]he purpose of uninsured motorist coverage 'is to compensate an insured who is the *victim of an uninsured motorist's negligence* to the same extent as if the uninsured motorist were insured.'" *Clark v. American Family Mut. Ins. Co.*, 218 Wis.2d 169, 178, 577 N.W.2d 790 (Wis. 1998) (citation omitted) (emphasis added).

Further, courts have rejected Plaintiff's interpretation of similar independent evidence requirements.  *See, e.g., Girgis v. State Farm Mut. Auto. Ins. Co.*, 75 Ohio St.3d

302, 662 N.E.2d 280 (1996), paragraph 2 of the syllabus ("The test to be applied . . .
allows the claim to go forward if there is independent third party testimony that the
negligence of an unidentified vehicle was a proximate cause of the accident.");
*Bituminous Ins. Co. v. Coker*, 314 Ga. App. 30, 722 S.E.2d 879 (2012) (citations omitted)
("Although three of the four witnesses established the presence of an unknown vehicle,
each described the vehicle in a different location, and none corroborated [Plaintiff's]
description of how the occurrence occurred . . . . [T]he insured must be able to prove that
the unknown driver was negligent. In the absence of evidence corroborating [Plaintiff's]
material allegation that the driver of the unknown vehicle negligently caused the
accident, [defendant] was entitled to summary judgment."); *cf. Mann v. Geico Gen. Ins.
Co.*, No. 2:12-CV-00909-RBL, 2013 WL 566903 (W.D. Wash. Feb. 13, 2013) (denying
plaintiff's motion for summary judgment on his bad faith claim regarding UM coverage
in miss-and-run accident where witnesses saw the other vehicle interacting with
plaintiff's vehicle before the accident and leaving the scene afterward).

Plaintiff relies on *Mosley v. Pers. Serv. Ins. Co.*, 4th Dist. No. 08CA779, 2009-
Ohio-419, to support his position. However, in *Mosley* the independent witnesses
testified to seeing the unidentified vehicle driving erratically, and that same vehicle
almost ran the witness over. *Id.* at ¶ 5. The court concluded that the independent
evidence was sufficient to corroborate plaintiff's claim that he was run off the road as a
result of the unidentified vehicle's erratic driving.

While Crosby's testimony provides evidence that an unidentified vehicle was in the proximity of the accident, it does not provide evidence that the vehicle was *involved in* the accident.[19]  Where the policy language is clear, the Court must enforce it as written.  *See Hirschhorn,* 2012 WI 20, at ¶ 24.  Accordingly, the Court finds that Plaintiff's claim for UM coverage fails, as a matter of law, for lack of independent third-party evidence of the unidentified vehicle's involvement in the accident.  Therefore, summary judgment is warranted in Defendant Northland's favor on Plaintiff's UM claim.[20]

## V.   CONCLUSION

Accordingly, for the foregoing reasons:

1.  Defendant State Farm's motion for summary judgment (Doc. 33) is **GRANTED**;

2.  Defendant Northland Insurance Company's motion for summary judgment (Doc. 35) is **GRANTED**;

3.  Defendant State Farm's motion for leave to amend its answer (Doc. 46) is **DENIED as MOOT**;

4.  Plaintiff's motion for summary judgment against Defendant State Farm (Doc. 57) is **DENIED**;

---

[19] Crosby admits as much:

Q: Okay. Do you have any knowledge at all regarding whether or not that other vehicle was in any way involved in Mr. Peterson's accident?

A: Other than assumptions, no sir.  I do not have any visual confirmation or anything like that, no, sir.

(Doc. 41 at 30).

[20] Because the Court determines that Plaintiff cannot provide independent corroborative evidence of the unidentified vehicle's involvement, the Court need not address the remainder of the arguments contained in Plaintiff's motion for summary judgment on his UM claim.

5. Plaintiff's motion for summary judgment against Defendant Northland Insurance Company (Doc. 58) is **DENIED**; and

6. The Clerk shall enter judgment accordingly, whereupon this civil action is **CLOSED** in this Court.

   **IT IS SO ORDERED**.

Date:  3/17/15                                          *s/ Timothy S. Black*
                                                        Timothy S. Black
                                                        United States District Judge